

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES F. H. SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 2148 |
| ) | |
| KELLI D. BENDER, et al., ) | Judge Ruben Castillo |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

James F. H. Scott brings this cause of action against Kelli D. Bender ("Defendant") for malicious prosecution (Count I); false imprisonment (Count II); violation of 42 U.S.C. § 1983 (Count III); and breach of contract (Count IV). (R. 6, Amend. Compl.) Presently before the Court is Defendant's motion to dismiss Scott's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth herein, Defendant's motion to dismiss is granted, and Scott's complaint is dismissed.

## RELEVANT FACTS

In deciding the instant motion, the Court assumes the veracity of the well-plead allegations in Scott's complaint and construes all reasonable inferences in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). At all times relevant to Scott's complaint, Defendant was Scott's former wife. (R. 6, Amend Compl. ¶ 10.) In Summer 2007, Scott and Defendant entered into a Separation and Property Settlement Agreement ("Agreement"). (*Id.* ¶ 11.) The Agreement provides, *inter alia*, "Anti-Harassment

Provisions," "Enforcement Provisions," "Taxes Provisions," "Antilitigation Provisions," and a "Time Provision." (*Id.* ¶ 12.)

In November 2008, Scott engaged a mutually acceptable certified public accountant, Aiken & Company ("Aiken"), to prepare tax returns as contemplated in the "Tax Provisions" of the Agreement. (*Id.* ¶ 13.) Scott immediately thereafter made efforts to communicate with Defendant's then-attorney, Tracy A. Meyer, regarding production of documents required for the returns. (*Id.* ¶ 14.) Scott explicitly informed Meyer that Defendant had, at the time, produced no tax documents relating to tax year 2004. (*Id.* ¶ 15.) Meyer and Defendant allegedly made communications tedious and exceedingly difficult, refusing at all times to engage in forms of instantaneous communication such as telephone conversations to discuss the coordination of production of tax documents. (*Id.* ¶ 16.) Meyer provided numerous assurances that Defendant had provided all necessary tax documents to Aiken. (*Id.* ¶ 17.)

On July 9, 2009, Scott visited the offices of Aiken to discuss the tax returns with Aiken's personnel. (*Id.* ¶ 18.) Notwithstanding Meyer's assurances of production, it was evident that Defendant had still not provided documents relating to tax year 2004. (*Id.* ¶ 19.) Later that day, Scott emailed Meyer, complaining that Defendant had still failed to produce documents relating to tax year 2004. (*Id.* ¶ 20.) On July 10, 2009, Meyer responded: "Mr. Scott, I have made it clear to you since last year that I am not authorized by Kelli to communicate with you at all on this case any further. There is no need for you to continue emailing me." (*Id.* ¶ 21.) Because Scott received no further communications from Meyer, on July 16, 2009, Scott emailed Meyer in exasperation. (*Id.* ¶ 22.) In his email, Scott complained that, among other things, Defendant had not provided Aiken with a W-2 Statement for 2004. (*Id.*) On July 20, 2009, Meyer responded

that according to Aiken, Defendant had furnished Aiken with everything they needed to prepare the joint returns, except for the 2004 W-2 Statement. (*Id.* ¶ 23.) According to Meyer, Defendant arranged for her former employer to send a copy of her 2004 W-2 Statement directly to Aiken. (*Id.*)

On December 14, 2009, Scott learned that Defendant still had not produced documents relating to tax year 2004. (*Id.* ¶ 24.) Scott immediately emailed Meyer, complaining of her client's continued failure to produce such documents. (*Id.* ¶ 25.) Meyer provided no response to Scott's December 14, 2009 email. (*Id.* ¶ 26.) Scott emailed Meyer again on December 18, 2009, inquiring when the 2004 tax documents would be produced. (*Id.* ¶ 27.) Scott still received no response. (*Id.* ¶ 28.) It was evident to Scott that Defendant was allegedly constructively unrepresented with respect to the execution of the requirements of the Agreement. (*Id.* ¶ 29.)

On December 20, 2009, Scott telephoned Defendant directly, leaving a voicemail message requesting that she contact him to discuss production of the 2004 tax documents. (*Id.* ¶ 30.) At this time, thirteen months had elapsed since Scott first requested production of the 2004 tax documents. (*Id.* ¶ 31.) During this thirteen month period, Defendant's and Meyer's limited discussions were largely confined to unfulfilled promises to produce. (*Id.* ¶ 32.) Defendant has testified that the tone of Scott's voicemail message was "very calm." (*Id.* ¶ 33.) Defendant did not return the voicemail message as Scott requested. (*Id.* ¶ 34.) Rather, Defendant called the Wheaton, Illinois police. (*Id.* ¶ 35.) The Wheaton, Illinois Police Department prepared a recording of the voicemail message. (*Id.* ¶ 36.)

On January 11, 2010, in cooperation with Assistant State's Attorney Frederick Flather and upon Flather's direction, Defendant filed a sworn verification of Flather's criminal

complaint, initiating criminal "telephone harassment" proceedings against Scott based on the voicemail message. (*Id.* ¶ 27.) Despite Scott's request, Flather refused to provide Scott with a copy of the voicemail message. (*Id.* ¶ 38.) Scott has attempted to secure an electronic copy of the voicemail message, submitting Freedom of Information Act requests to the DuPage County State's Attorney's Office and the Wheaton, Illinois Police Department. (*Id.* ¶ 39.) Each body has denied being in possession of the voicemail message. (*Id.*) In subsequent proceedings, Defendant testified that the voicemail message was the first direct contact she had received from Scott since 2007. (*Id.* ¶ 40.)

On January 28, 2010, with Flather's guidance, encouragement, assistance, and participation, and at Flather's request, Defendant petitioned the Circuit Court for DuPage County for an Order of Protection ("Petition") against Scott. (*Id.* ¶ 41.) The Petition was prepared on a preprinted form, and in the appropriate location, Defendant identified the incident which formed the basis of the Petition as: "James contacted me on my private cell phone and left me a message regarding taxes. I don't know how he got my phone number because I never gave it to him. I didn't call him back instead I contacted the local police department because James is not supposed to have any contact with me per our divorce decree. During our marriage, James was very controlling and I am afraid of him." (*Id.* ¶ 42.) The Petition allegedly served no other purpose than to vex and harass Scott. (*Id.* ¶ 43.)

Both Flather and Defendant intended for the Arlington County, Virginia, Sheriff's Office to effect service of the Petition upon Scott at his home in Arlington. (*Id.* ¶ 44.) Both Flather and Defendant were aware that the Arlington County Sheriff's Office would receive no compensation for its efforts to serve the petition. (*Id.* ¶ 45.) Flather and Defendant availed themselves of the

4

services of the Arlington County Sheriff's Office to effect service upon Scott in the Commonwealth of Virginia. (*Id.* ¶ 46.) Indeed, Deputy Rodney Williams of the Arlington County Sheriff's Office attempted to effect service upon Scott. (*Id.* ¶ 47.) Scott was, however, on extended business in Boston when Deputy Williams attempted to effect service, and on account of extraordinary contemporaneous snow conditions, Scott was only able to return to Arlington, Virginia on weekends, when the Arlington County Sheriff's Office could not effect service in person. (*Id.* ¶ 48.)

On February 11, 2010, an *ex parte* hearing relating to the Petition nevertheless occurred. (*Id.* ¶ 49.) Scott had not been served with the Petition and was not present at the February 11, 2010, hearing. (*Id.* ¶ 50.) At the *ex parte* hearing the presiding judge characterized the Petition as being "extremely skimpy." (*Id.* ¶ 51). The judge stated, "[w]ell, the description of incidents indicates a phone call based on taxes. So I presume there is more to it and I'm going to allow you to file a supplemental description of incidents and we'll go from there." (*Id.* ¶ 52.) Later, Defendant testified about the circumstances surrounding the voicemail message. (*Id.* ¶ 53.) During her testimony, Defendant made no allegations of the use of foul language, abusive tone, or threats in the voicemail message. (*Id.* ¶ 54.) The judge denied the Petition without the benefit of Scott's presence, testimony, or examination of Defendant. (*Id.* ¶ 55.) Upon the denial of the Petition for an Order of Protection, Flather and Defendant allegedly knew or reasonably should have known that the "telephone harassment" charges were completely unmeritorious. (*Id.* ¶ 56.)

Despite the failure of the Petition for an Order of Protection, Defendant was undeterred, and the pursuit of the "telephone harassment" charges based on the same occurrence—a "very calm" voicemail message relating to a contractual duty Defendant had neglected for thirteen

months—continued. (*Id.* ¶ 61.) On March 22, 2010, Scott was arrested, taken into custody, handcuffed, searched numerous times, deprived of his belt and shoelaces, held in a cell with apparent criminals for several hours, fingerprinted three times, and forced to post $1,000.00 bond in DuPage County, Illinois. (*Id.* ¶ 62.) The terms of bond releasing Scott from the DuPage County Jail required that Scott remain within the State of Illinois. (*Id.* ¶ 63.) Scott and his dog live in the Commonwealth of Virginia. (*Id.* ¶ 64.) On March 23, 2010, Scott filed a motion to modify the terms of bond permitting him to leave the State of Illinois, providing the required three-day notice for that motion to be heard. (*Id.* ¶ 65.) On March 26, 2010, Scott's motion to modify the terms of bond was granted, and he returned to his home in Virginia. (*Id.* ¶ 66.)

On April 15, 2010, Scott sent an email to Meyer informing her, among other things, that Defendant should make arrangements for the immediate dismissal of the "telephone harassment" case and that Scott intended to pursue enforcement of the Agreement. (*Id.* ¶ 67.) Defendant has acknowledged that Meyer forwarded the April 15, 2010, email to her. (*Id.* ¶ 68.) Defendant has also acknowledged that she made no effort to have the "telephone harassment" charges dismissed. (*Id.* ¶ 69.) Defendant has acknowledged that, notwithstanding the "Anti-Harassment" and "Antilitigation" provisions of the Agreement, she conferred with Flather every "couple of weeks" through the trial of the "telephone harassment" charges. (*Id.* ¶ 70.)

Scott allegedly suffered acute emotional distress on account of his arrest. (*Id.* ¶ 71.) On account of the emotional trauma and extreme anxiety Scott encountered, soon after his return from Illinois he began talking a selective serotonin reuptake inhibitor under consistent psychiatric monitoring. (*Id.* ¶ 72.) Scott continues to take that selective serotonin reuptake inhibitor under regular psychiatric care to this date. (*Id.* ¶ 73.)

Trial of the "telephone harassment" charges occurred on September 27, 2010. (*Id.* ¶ 74.) Representing himself, Scott won a directed verdict of not guilty at the close of the People's case as presented by Flather. (*Id.* ¶ 75.) As the transcript of the trial reflects, Defendant twice testified that Scott's tone in the voicemail message was "very calm." (*Id.* ¶ 76.)

## PROCEDURAL HISTORY

On March 23, 2012, James F. H. Scott commenced this action by filing a complaint against Kelli D. Bender and Frederick P. Flather alleging malicious prosecution against Bender (Count I); false imprisonment against Bender (Count II); violation of 42 U.S.C. § 1983 against Bender (Count III); breach of contract against Bender (Count IV); and tortious interference with contract against Flather (Count V). (R. 1, Compl.)

On April 10, 2012, the Court dismissed the complaint without prejudice citing the absolute or qualified immunity that Flather is entitled to for his actions as an Assistant State's Attorney in DuPage County. (R. 5, Min. Entry.) On June 12, 2012, Scott filed an amended complaint alleging the present claims against Bender. (R. 6, Amend. Compl.)

Defendant filed her motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 22, 2012. (R. 13, Def.'s Mot.) Scott admits that his § 1983 action against Defendant is time-barred but he argues that such an affirmative defense is an improper basis to dismiss under Rule 12(b)(6). (R. 15, Pl.'s Resp. at 2.) Defendant argues that Scott's remaining claims do not satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. (R. 13, Def.'s Mot. at 5-6.) In addition, Defendant argues that all of Scott's claims are barred pursuant to the doctrine of *res judicata*. (*Id.* at 7.) Next, Defendant argues that Scott's claims should be dismissed or stayed pursuant to the doctrine set forth in *Colorado River*

*Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818 (1976) as duplicative of claims alleged by Scott in judicial proceedings that were filed in the Circuit Court of Arlington County, Virginia. (*Id.* at 8-9.) Defendant further argues that Count II is barred by the statute of limitations and fails to state a claim upon which relief can be granted. (*Id.* at 9-10.) Finally, Defendant argues that Count IV must be dismissed because it fails to state a claim upon which relief can be granted. (*Id.* at 10-11.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000 and the suit is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). The plaintiff, as the party invoking the Court's jurisdiction, bears the burden of proving jurisdictional facts by a preponderance of the evidence. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the jurisdictional allegations of the complaint and view evidence to determine whether jurisdiction has been established. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The determination is based on "what the plaintiff is claiming," and "not whether plaintiff is likely to win or be awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). With respect to the amount in controversy, dismissal is appropriate only if it is "legally certain" that recovery will be less than the jurisdictional floor. *Meridian Sec. Ins. Co.*, 441 F.3d at 543.

When the jurisdictional threshold is uncontested, the Court generally "will accept the

plaintiff's good faith allegation of the amount in controversy." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal citations omitted). However, when a defendant challenges the amount in controversy, the plaintiff must support his assertion with "competent proof." *Id.* A party must do more than "point to the theoretical availability of certain categories of damages." *Am. Bankers Life Assur. of Fla. v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003). General assertions of damages, unsupported by any facts or evidence of specific injury, do not suffice. *See, e.g., Ganjavi v. Smith*, No. 06 C 4189, 2007 WL 2298375, at *4 (N.D. Ill. July 31, 2007).

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the well-plead facts alleged in the plaintiff's complaint and construes all reasonable inferences in favor of the nonmoving party. *See Erickson*, 551 U.S. at 94; *Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true. . .state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-plead, the Court entitles them to the presumption of truth and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *See id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct

alleged. *See id.* at 678.

When considering a Rule 12(b)(6) motion to dismiss, the Court is generally confined to allegations in the complaint and cannot consider extrinsic evidence without converting the motion into one for summary judgment, although "the bar on considering matters outside the pleadings is not absolute." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005). The limitation on what the Court may consider is attenuated by Rule 10(c) of the Federal Rules of Civil Procedure insofar as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" may also be considered by the Court in deciding a motion to dismiss without converting it into a motion for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. Pro. 10(c)). Documents that a defendant attaches to a motion to dismiss will be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *See, e.g., Maxwell v. Cnty. of Cook*, No. 10 C 320, 2011 WL 1004561, at *3 (N.D. Ill. March 17, 2011) (citing *Cont'l Cas. Co.*, 417 F.3d at 731 n.3). Furthermore, the Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). This includes taking judicial notice of state court decisions. *See 520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008) (citing *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006)).

Federal Rule of Civil Procedure 8(a)(2) therefore imposes "two easy-to-clear hurdles" on every complaint in order to survive a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). *See Tamayo v. Blagojevich*, 536 F.3d 1074, 1804 (7th Cir. 2008) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555)) (internal citations and quotation marks omitted); *accord Iqbal*, 556 U.S. at 678. First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them, which requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Concentra*, 496 F.3d at 776. Notice to the defendant alone, however, is not sufficient. To survive a motion to dismiss, the complaint must also include factual allegations which "plausibly suggest a right to relief, raising that possibility above a speculative level." *See id.* If a complaint does not satisfy these two "hurdles," "the plaintiff pleads itself out of court." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that were merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The plausibility standard means that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* Thus, a motion to dismiss may be properly granted in favor of the moving party where the plaintiff does not allege a plausible entitlement to relief either by failing to provide the defendant with notice of plausible claims alleged against her or by asserting only speculative or conclusory allegations in the complaint.

## ANALYSIS

Scott invokes federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as his claim brought under 42 U.S.C. § 1983 arises under the laws of the United States. (R. 6, Amend. Compl. ¶¶ 5, 94.) Defendant asserts that Scott's § 1983 claim is untimely, as it was brought more that two years after the arrest that forms the basis of the action. (R. 13, Def.'s Mot. at 4.) Section 1983 does not contain an express statute of limitations, so the Court must apply the forum state's statute of limitations for personal injury suits to claims brought pursuant to § 1983. *See Wallace v. Kato*, 594 U.S. 384, 387 (2007). The statute of limitations for § 1983 claims filed in Illinois is two years, as provided for in 735 Ill. Comp. Stat. 5/13-202. *See Ashafa v. City of Chi.*, 146 F.3d 456, 462 (7th Cir. 1998); *see also Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). Scott concedes that his § 1983 action is untimely but argues that the timeliness of a cause of action is not a proper basis for dismissal under Rule 12(b)(6). (R. 15, Pl.'s Resp. at 2.) Scott is correct that a plaintiff's failure to timely file a complaint under the governing statute of limitations is an affirmative defense, and as such it need not be anticipated by the complaint in order to survive a motion to dismiss. *See Indep. Trust. Corp. v. Steward Inf. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). However, when the complaint "sets out all of the elements of an affirmative defense" and plainly reveals that an action is untimely, dismissal under Rule 12(b)(6) is the appropriate remedy. *Id.* The § 1983 action arises out of an arrest that Scott affirmatively pleads occurred on March 22, 2010. (R. 6, Amend. Compl. ¶¶ 62, 87.) Scott's original complaint in this matter was filed on March 23, 2012, two years and one day after the alleged arrest. (R. 1, Compl.) The statute of limitations in Illinois for claims brought pursuant to § 1983 is two years. *See* 735 Ill. Comp. Stat. 5/13-202; *Ashafa*, 146 F.3d at 462; *Jenkins*, 506 F.3d at

12

623. Thus, Scott's § 1983 cause of action contained in Count III is untimely and it is therefore dismissed pursuant to Rule 12(b)(6).

Because his only count arising under federal law is dismissed, Scott must rely on diversity jurisdiction pursuant to 28 U.S.C. § 1332 to invoke federal jurisdiction for the remainder of his claims. Scott prays for $150,000 in compensatory damages on each of his counts and $300,000 in punitive damages on Counts I-III. (R. 6, Amend. Compl. ¶¶ 85, 92, 96, 101.) Defendant argues that the claims do not support the amount in controversy of $75,000 because Scott does not allege actual damages that would justify compensation in the amount he prays for or the threshold jurisdictional amount. (R. 13, Def.'s Mot. at 5.) Scott, however, claims that the compensatory damages and punitive damages sought in his complaint are sufficient to invoke the jurisdiction of this Court. (R. 15, Pl.'s Resp. at 5-6.)

Assuming, *arguendo*, that compensatory damages are recoverable, Scott must offer "competent proof" in support of his amount in controversy assertion. *McMillian*, 567 F.3d at 844; *Brill*, 427 F.3d at 447 ("Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction."). In his response, Scott merely argues that his complaint states "quite reasonable damages well in excess of $75,000." (R. 15, Pl.'s Resp. at 5.) He asserts that he was "arrested, handcuffed, taken into custody, searched numerous times, held in a jail cell for several hours, fingerprinted, detained in Illinois for four days pending a hearing on his motion to modify bail, and suffered acute emotional trauma and anxiety necessitating intensive, continuing, psychiatric care." (*Id.*) Scott further argues in support of his damages claim that he has spent in excess of $2,500 in out-of-pocket expenses and over 200 hours defending the criminal charges and

13

enforcing the Agreement. (*Id.*) He further argues that he has spent over $7,500 in medical expenses arising out of the alleged false arrest and malicious prosecution. (*Id.* at 5-6.) Finally, he asserts that in his capacity as an Assistant General Counsel for the General Services Administration he must maintain a medium level security clearance, with a five year review of that clearance anticipated in 2013. (*Id.* at 6.)

Aside from his affidavit admitting only to the $10,000 in out-of-pocket expenses (R. 15, Pl.'s Resp., Ex. B), Scott has offered no affidavits or supporting materials to meet his burden of "proving jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co.*, 441 F.3d at 543. His assertion that he suffered "embarrassment, damage to reputation, harassment, emotional distress, loss of time, and other damages," (R. 6, Amend. Compl. ¶¶ 84, 91, 95, 100), is unsupported by any facts or evidence of specific injury. Furthermore, Scott cites no authority for why he should be compensated for the time he spent defending the criminal charges and enforcing the Agreement. Scott does not indicate that he lost time at work or otherwise incurred any compensable expenses associated with the time he spent defending the criminal charges and enforcing the Agreement. To the extent that Scott is seeking compensation pursuant to the parties' Agreement, compensation under the relevant provision of that Agreement is only available if a party is successful in enforcing the Agreement. Scott has not alleged that he was. Any "expenses" Scott may have incurred under the Agreement are purely speculative at this point. Furthermore, pursuant to 28 U.S.C. § 1332, the amount in controversy must exceed $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a). To the extent that any of the 200 hours cited by Scott were expended in prosecuting the instant matter, they would constitute costs, not damages. *See Gardynsky-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998)

("jurisdiction depends on the state of affairs when the case begins; what happens later is irrelevant").

In fact, Scott has not even alleged what amount he might be entitled to based on the claimed 200 hours. In addition, Scott has failed to explain how his position as a government lawyer translates to damages sufficient to meet the jurisdictional threshold. To the extent that Scott is implying that the underlying criminal proceedings could adversely affect his anticipated security clearance review in 2013, any damages in that regard are purely speculative. Finally, the Court is not persuaded that Scott's arrest, custody, fingerprinting, detention in Illinois, or the alleged psychological damage that he suffered as a consequence gave rise to "embarrassment, damage to reputation, harassment, emotional distress, loss of time, and other damages" supported by evidence or facts of specific injury. *See, e.g., Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1066 (N.D. Ill. 2009) (holding that allegations of "reputational harm, emotional harm, emotional suffering, and humiliation" in addition to "substantial" legal expenses were too vague to establish the jurisdictional floor for damages, absent any actual evidence of injury). The Court therefore finds that these allegations are vague generalizations that do not rise to the level of competent proof required to meet the statutory amount in controversy requirement necessary to invoke the jurisdiction of this Court. *See* 28 U.S.C. § 1332(a); *see, e.g., Ganjavi*, 2007 WL 2298375, at *4 (holding that absent any actual evidence of injury, the plaintiff's allegations were too vague to establish the jurisdictional floor for damages).

Next, Scott contends that he may rely on punitive damages to satisfy the amount in controversy requirement. (R. 15, Pl.'s Resp. at 6.) The Seventh Circuit has cautioned against finding the amount in controversy requirement met for "claims filed in federal court that attempt

to circumvent the amount in controversy requirement for diversity jurisdiction by seeking excessive and unrealistic punitive damages." *Smith v. Am. General Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 893 (7th Cir. 2003). The Court must "take a realistic look at the size of the punitive damages demanded" to see if they are sufficient to invoke the exercise of federal jurisdiction. *Id.* at 894 (citing *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Where punitive damages are relied upon to satisfy the amount in controversy requirement, the Court must first determine whether punitive damages are recoverable under the applicable law. *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008). The Seventh Circuit has cautioned that "if it appears to a legal certainty that the claim for the requisite level of punitive damages cannot be sustained, then regardless of how much the plaintiff seeks in punitive damages relative to compensatory damages, []he cannot use the punitive damages towards the jurisdictional minimum." *Smith*, 337 F.3d at 896.

Scott cites *Adams v. Zayre Corp.*, 499 N.E.2d 678, 685-86 (Ill. App. Ct. 2d Dist. 1986), for the proposition that punitive damages are recoverable under Illinois state law for claims of false imprisonment. (R. 15, Pl.'s Resp. at 5.) Unlike the plaintiff in *Adams, see id.*, Scott has not alleged or otherwise presented any facts that would establish that his arrest and subsequent prosecution were conducted recklessly, oppressively, insultingly, willfully, or in violation of any guidelines or rules established for such procedures. Furthermore, the award of punitive damages in *Adams, id.* at 685, was $30,000, a far cry from the $300,000 that Scott is praying for in the instant case. There is no basis in Illinois law to support such a vast award of punitive damages for a claim of false imprisonment, and it appears to a legal certainty that the claim of $300,000 in punitive damages cannot be sustained on Scott's false imprisonment claim. *See Smith*, 337 F.3d

at 896.

Scott cites *William J. Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669, 674-75 (Ill. App. Ct. 1st Dist. 2000), for the proposition that punitive damages are also recoverable under Illinois law for claims of malicious prosecution. (R. 15, Pl.'s Resp. at 5.) Scott ignores or fails to appreciate the principle that the Illinois Appellate Court was trying to express in *Templeman*; namely, that punitive damages and compensatory damages are not identical, and that punitive damages for a claim of malicious prosecution require a "higher degree of malice than is necessary to prove malicious prosecution." *Id.* at 674 (citing *AAA Employment, Inc. v. Weed*, 457 So.2d 428, 432 (Ala. Civ. App. 1984)). "In a malicious prosecution case in the absence of proof of malice, [the plaintiff] would only be entitled to recover compensatory damages." *Id.* at 674-75 (quoting *Thieme v. MacArthur*, 1 N.E.2d 514, 518 (Ill. App. Ct. 2d Dist. 1936)) (internal quotation marks omitted); *see also Swick v. Liautaud*, 662 N.E.2d 1238, 1247 (Ill. 1996) (McMorrow, J. concurring) ("[A] defendant's conduct may be sufficiently malicious to support the underlying cause of action without necessarily being sufficient to support an award of punitive damages."). Scott has not provided any facts, either in his pleading or in his response to Defendant's motion to dismiss, that would establish malice beyond the norm for a malicious prosecution claim. Therefore, Scott has not come forward with "competent proof" that his claim for malicious prosecution could support an award of punitive damages in the amount of $300,000, and it appears to a legal certainty that the claim of $300,000 in punitive damages cannot be sustained on Scott's malicious prosecution claim. *See Smith*, 337 F.3d at 896.

A plaintiff must present competent proof to support his punitive damages claims; he "cannot simply wave" those claims "in [the Court's] face." *In re Brand Name Prescription*

*Drugs Antitrust Litig.*, 123 F.3d 566, 607 (7th Cir. 1997). But that is just what Scott has done here—wave his unsupported $300,000 punitive damages claim in the Court's face. Scott's complaint does not contain facts that support an award of punitive damages, and therefore his speculation as to the amount of such an award will not be considered by this Court in its determination of the amount in controversy. *See Smith*, 337 F.3d at 896 (finding no basis in Illinois law to support such a large award of punitive damages to establish the amount in controversy minimum); *see, e.g., Lewis*, 631 F. Supp. 2d at 1067 (finding that the plaintiff's prayer for punitive damages could not be used to calculate the jurisdictional threshold where the plaintiff's complaint could not support an award of punitive damages).

In sum, the Court finds that Scott has failed to meet his burden of demonstrating that he has satisfied the jurisdictional threshold and instead has simply pointed to speculative or theoretical possibilities of recovery. Accordingly, Defendant's motion to dismiss is granted pursuant to Rule 12(b)(1).[1]

Under well-settled Seventh Circuit law, there is no federal claim for malicious prosecution where state law provides an adequate remedy. *See Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) ("[T]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."); *see also Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002); *McCullah v. Gadert*, 344 F.3d 655, 658-59 (7th Cir. 2003); *Holmes v. Vill. of*

---

[1] Because the Court dismisses the complaint for lack of jurisdiction, it need not address the Defendant's alternative arguments that all of Scott's claims are barred pursuant to the doctrine of *res judicata*; that Scott's claims should be dismissed or stayed pursuant to *Colorado River*, 424 U.S. at 818, as duplicative of claims alleged by Scott in judicial proceedings that were filed in the Circuit Court of Arlington County, Virginia; that Count II is barred by the statute of limitations and fails to state a claim upon which relief can be granted; and that Count IV fails to state a claim upon which relief can be granted. (R. 13, Def.'s Mot. at 7-11.)

*Hoffman Estate*, 511 F.3d 673, 683 (7th Cir. 2007); *Parish v. City of Chi.*, 594 F.3d 551, 553 (7th Cir. 2009). Illinois recognizes the tort of malicious prosecution, and therefore provides aggrieved plaintiffs with an adequate remedy at law. *See Ray v. City of Chi.*, 629 F.3d 660, 664 (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Thus, malicious prosecution cannot be brought as a constitutional tort pursuant to § 1983. *See Newsome*, 256 F.3d at 750. However, Scott can bring a claim for malicious prosecution in Illinois state court, as the statute of limitations for malicious prosecution claims accrues when the underlying criminal proceedings terminate in the plaintiff's favor. *See Ferguson v. City of Chi.*, 820 N.E.2d 455, 462 (Ill. 2004). The proceedings do not terminate, and a claim for malicious prosecution does not accrue, until the State is precluded from seeking reinstatement of the charges. *See id.* at 461. That period is marked by the expiration of the statutory speedy-trial period. *See id.* Only then can the underlying criminal proceedings against the plaintiff be deemed to have terminated. *See id.* at 462. In addition, Scott may bring his breach of contract action in Illinois state court because breach of written contract claims are governed by a ten-year statute of limitations. *See Armstrong v. Guigler*, 673 N.E.2d 290, 293 (Ill. 1996) (holding that for oral contracts, as opposed to written ones, the five-year statute of limitations applies rather than the ten-year statute of limitations). Unfortunately for Scott, the statute of limitations has run on his claim for false imprisonment, as under Illinois law claims for false imprisonment are governed by a two-year statute of limitations. *See Montague v. George J. London Mem'l Hosp.*, 396 N.E.2d 1289, 1293 (Ill. App. Ct. 1st Dist. 1979). Therefore, the appropriate forum for Scott's claims of malicious prosecution and breach of contract is Illinois state court, where his claims may not have already accrued and where he need not plead damages in excess of $75,000 to proceed.

## CONCLUSION

For the reasons set forth above, the Court finds that Scott's § 1983 claim is barred by the statute of limitations and that diversity jurisdiction does not exist to support the remainder of Scott's claims in this case and therefore that it has no jurisdiction over the matter. Accordingly, Defendant's motion to dismiss (R. 13) is GRANTED. The dismissal shall be without prejudice to the refiling of Scott's potential state law claims in an appropriate state court as detailed in this opinion.

ENTERED: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated: September 26, 2012**