UNITED STATES DISTRICT COURT
NORTHERN DIVISION OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES F. H. SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 2148 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| KELLI D. BENDER, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

James F.H. Scott, appearing *pro se*, brought suit in this Court against Kelli D. Bender

alleging malicious prosecution (Count I); false imprisonment (Count II); a violation of 42 U.S.C.

§ 1983 (Count III); and breach of contract (Count IV). (R. 6, Am. Compl.) On September 26,

2012, the Court dismissed Scott's complaint for lack of federal subject-matter jurisdiction. *Scott

v. Bender*, 893 F. Supp. 2d 963 (N.D. Ill. 2012). Presently before the Court is Scott's motion to

reconsider the Court's prior Memorandum Opinion and Order pursuant to Federal Rule of Civil

Procedure 60(b). (R. 20, Pl.'s Mot.) For the reasons set forth herein, Scott's motion is denied.

## RELEVANT FACTS

The Court adopts all of the facts as set forth in its previous Memorandum Opinion and

Order granting Bender's motion to dismiss. *See Scott*, 893 F. Supp. 2d at 966-69.

## PROCEDURAL HISTORY

On March 23, 2012, Scott commenced this action by filing a complaint against Bender

and Frederick P. Flather. (R. 1, Compl.) In his complaint, Scott alleged claims against Bender,

his former wife, for malicious prosecution (Count I); false imprisonment (Count II); a violation

of 42 U.S.C. § 1983 (Count III); and breach of contract (Count IV). (*Id.*) Against Flather, Scott

1

alleged a claim for tortious interference with contract (Count V). (*Id.*) On April 10, 2012, the

Court dismissed the complaint without prejudice, citing the absolute or qualified immunity that

Flather was entitled to for his actions as an Assistant State's Attorney in DuPage County,

Illinois. (R. 5, Min. Entry.) On June 12, 2012, Scott filed an amended complaint alleging the

present claims solely against Bender. (R. 6, Am. Compl.)

On August 22, 2012, Bender filed a motion to dismiss Scott's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, as well as

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted. (R. 13, Def.'s Mot.) The Court granted Bender's motion on September 26, 2012. *See*

*Scott*, 893 F. Supp. 2d at 976. The Court held that Scott's § 1983 claim was barred by the statute

of limitations, which is two years in Illinois for claims brought pursuant to § 1983. *See id.* at

972; *see also Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). Because Scott's § 1983 claim

was his only claim arising under federal law, Scott had to rely on diversity jurisdiction to invoke

the jurisdiction of this Court to pursue his other claims. *See Scott*, 893 F. Supp. 2d at 972.

However, the Court determined that Scott's remaining claims failed to allege the necessary

amount in controversy to confer diversity jurisdiction under 28 U.S.C. § 1332(a). *See id.* at 973-

76. Accordingly, the Court dismissed Scott's complaint for lack of federal jurisdiction. *See id.*

at 976.

On October 15, 2012, Scott filed the instant motion to reconsider pursuant to Rule 60(b)

of the Federal Rules of Civil Procedure. (R. 20, Pl.'s Mot.) Scott argues that extraordinary

circumstances exist which warrant reconsideration of the Court's prior Opinion. (*Id.* at 1-2.) He

argues that the Court erred when it held that it lacked jurisdiction over his case. (*Id.* at 3.)

Specifically, Scott argues that the Court erred when it allegedly concluded that: (1) he failed to

put forth "any facts or evidence of specific injury"; (2) he failed to allege facts entitling him to punitive damages on his false imprisonment claim; (3) he must prove the entirety of his $300,000 claim for punitive damages on his false imprisonment claim; and (4) he failed to allege facts entitling him to punitive damages on his malicious prosecution claim. (*Id.* at 3-4.) Scott argues that the Court misapplied the law when it held that his allegations failed to establish plausible punitive damages in excess of $75,000, the amount necessary to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (*Id.* at 9.)

Bender responded to Scott's motion on November 2, 2012. (R. 23, Def.'s Resp.) Bender argues that no extraordinary circumstances exist which warrant relief under Rule 60(b). (*Id.* at 1-3.) She also argues that Scott's motion is an attempt to rehash or relitigate his original arguments, which she claims is improper on a motion to reconsider. (*Id.* at 3-5.)

Scott replied to Bender's response on November 13, 2012. (R. 24, Pl.'s Reply.) Scott argues that Bender's "impecunity" is an exceptional circumstance meriting reconsideration under Rule 60(b). (*Id.* at 1-2.) He again argues that the Court made manifest errors of law when it held that his allegations did not support plausible punitive damages above $75,000 sufficient to meet the amount in controversy for diversity jurisdiction and that therefore he cannot have his case heard before this Court. (*Id.* at 2-4.)

## LEGAL STANDARD

A "motion to reconsider" does not exist under the Federal Rules of Civil Procedure. *Talano v. NW. Med. Faculty Found.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). Thus, a motion that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994) ("Though the plaintiffs did not file their motion to

reconsider pursuant to any one of the Federal Rules of Civil Procedure, the fact that it challenges the merits of the district court's decision means that it must fall under Rule 59(e) or Rule 60(b).") (internal quotation marks omitted). Whether to characterize a motion as arising under Rule 59(e) or 60(b) depends on the nature of the motion. "[I]t is the substance, rather than the form, of a post-judgment motion that determines the rule under which it should be analyzed." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). A Rule 60(b) motion must be brought within a "reasonable time"—and within a year for mistake, newly discovered evidence, or fraud—after the entry of judgment. Fed. R. Civ. P. 60(c)(1); Fed. R. Civ. P. 60(b)(1), (2), (3). Rule 60(b) also contains a catch-all provision granting the court discretion to fashion a remedy for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A Rule 59(e) motion must be "filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

Scott brings his motion pursuant to Rule 60(b). (R. 20, Pl.'s Mot.) A Rule 60(b) motion is brought for "relief from a final judgment." Fed. R. Civ. P. 60(b). Under Rule 60(b), a court may vacate its previous judgment for a variety of reasons including mistake, excusable neglect, newly discovered evidence, or fraud. Fed. R. Civ. P. 60(b)(1), (2), (3). Unlike Rule 59(e), Rule 60(b) "is an extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (quoting *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir.1997)) (internal quotation marks omitted). Relief under Rule 60(b) is limited to the "particular circumstances listed in the text of the rule." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) (internal citation omitted). The Rule was designed to address mistakes attributable to special circumstances, *not* to address erroneous applications of law. *Id.* The resolution of a Rule 60(b) motion is committed to the sound discretion of this Court, and its ruling is reviewed only for an

abuse of that discretion, which is shown when no reasonable person could agree with the Court's ruling. *Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009).

Under Rule 59(e), a district court may entertain "[a] motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). Motions for reconsideration pursuant to Rule 59(e) are utilized for a very limited purpose: to correct manifest errors of law or fact, to present newly discovered evidence, or where there has been an intervening and substantial change in the controlling law since the submission of the issues to the district court. *Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 848 (7th Cir. 1999) (citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). Motions to reconsider sounding under Rule 59(e) should only be granted in rare circumstances. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("[T]he motion to reconsider should be equally rare.")). A party moving for reconsideration pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse it prior judgment. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). A Rule 59(e) motion for reconsideration is not an appropriate vehicle for relitigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration. *Id.*; *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007).

A manifest error of law is the "disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Id.* The decision to grant a Rule 59(e) motion to reconsider lies in the sound discretion of this Court, and its ruling will only by disturbed upon a showing that the Court

abused that discretion. *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991).

A court should correct a manifest error of law when a motion to do so is made pursuant to Rule 59(e). *Russell*, 51 F.3d at 749. Rule 59(e)'s strict time limit permits the correction of a mistake at a relatively early, and consequently less expensive, stage in the process of the review of judgments. *W. Indus., Inc. v. Newcor Can. Ltd.*, 709 F.2d 16, 17 (7th Cir. 1983). Furthermore, a district court reviews its prior judgments under Rule 59(e) to determine whether "there exists a manifest error of law or fact so as to enable the court to correct its own errors and thus avoid unnecessary appellate procedures." *Divane*, 194 F.3d at 847. Rule 60(b), on the other hand, is not an appropriate vehicle for addressing simple legal error; otherwise, a party could circumvent the ordinary time limitations for filing a Rule 59(e) motion or a notice of appeal pursuant to Federal Rule of Appellate Procedure 3(a). *Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017-18 (7th Cir. 2002); *Russell*, 51 F.3d at 749 (internal citation omitted).

## ANALYSIS

Scott has not alleged an exceptional circumstance sufficient to support a Rule 60(b) motion. He cites no authority that his circumstances or Bender's alleged "impecunity" fall within those listed in Rule 60(b), or even within the broad language of the Rule's catch-all provision. Fed. R. Civ. P. 60(b)(6). Scott's only other argument for relief is that the Court made "manifest errors" of law. (R. 20, Pl.'s Mot. at 3.) This argument, however, is the province of Rule 59(e) *and not* Rule 60(b). Although Scott's motion fails under Rule 60(b), courts liberally construe motions to reconsider. *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983). Courts determine whether to analyze a motion under Rule 59(e) or Rule 60(b) depending on the substance, not the styling, of the motion. *Obriecht*, 517 F.3d at 493. When a party makes a

6

motion for "reconsideration" which seeks to correct "errors of law" within 28 days after the entry of judgment, a court may construe it as a Rule 59(e) motion, even if it is styled as a Rule 60(b) motion. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 495 n.5 (7th Cir. 2011). Although Scott brought his motion under Rule 60(b), he seeks "reconsideration" for "manifest errors" of law. (R. 20, Pl.'s Mot. at 1, 3.) Furthermore, he filed his motion only 19 days after the Court's Memorandum Order and Opinion dismissing his complaint, which is well within the timeframe for bringing a Rule 59(e) motion. (R. 19, Mem. Op. & Order; R. 20, Pl.'s Mot.) Accordingly, the Court construes Scott's motion as a Rule 59(e) motion to alter or amend the judgment. *See Seng-Tiong Ho*, 648 F.3d at 495 n.5 ("The plaintiffs' motion for reconsideration states that it is brought under Rule 60(b). A motion under Rule 60(b) seeks relief from a judgment. The plaintiffs' motion, however, reiterates that it seeks 'reconsideration' from the district court in part because of errors of law. An error of law is a basis for altering or amending the judgment under Rule 59(e), but it is not explicitly recognized as a basis for relief under Rule 60(b). The plaintiffs also filed their motion for reconsideration within the time allowed under Rule 59(e). Accordingly, . . . the substance of the motion reveals that it is a Rule 59(e) motion to alter or amend a judgment.") (internal citations omitted).

Federal diversity jurisdiction requires an amount in controversy that equals or exceeds $75,000. 28 U.S.C. §1332(a). In his amended complaint, Scott prayed for $600,000 in compensatory damages ($150,000 on each of his four Counts) and $600,000 in punitive damages ($300,000 for his claim of false imprisonment and $300,000 for his claim of malicious prosecution). (R. 6, Am. Compl. at 13-15.) Although Scott lists damages above the amount in controversy threshold, he fails to support these alleged damages with specific facts or evidence that plausibly entitle him to relief. *See McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d

839, 844 (7th Cir. 2009) (internal citations omitted). He alleges no facts or evidence in support

of his prayer for compensatory damages other than an affidavit attesting to $10,000 in medical

expenses and litigation costs.[1] (R. 15, Pl.'s Resp., Ex. B, Aff.) Scott's alleged punitive damages

fare no better. Scott's false imprisonment claim cannot support an award of punitive damages

because it is time-barred. Similarly, as discussed below, Scott's malicious prosecution claim

does not allege malice of the type that is required to recover punitive damages. For these

reasons, Scott fails to allege that he is plausibly entitled to damages in excess of $75,000, and

thus fails to satisfy the amount in controversy required for diversity jurisdiction. *See* 28 U.S.C.

§ 1332(a). As the Court originally held, Scott is therefore precluded from bringing suit in this

Court. *See Scott*, 893 F. Supp. 2d at 976; *see also In re Brand Name Prescription Drugs*

*Antitrust Litig.*, 123 F.3d 599, 607-08 (7th Cir. 1997).

## I.    Compensatory damages

Scott argues that the Court erred when it concluded that he failed to "put forth any facts

or evidence of specific injury." (R. 20, Pl.'s Mot. at 4.) Scott mischaracterizes what the Court

actually held. The Court did not find that Scott failed to put forth *any* evidence of specific

injury; rather, the Court found that Scott failed to put forth *sufficient* evidence of specific injury.

*See Scott*, 893 F. Supp. 2d at 973-74. The Court did acknowledge that Scott submitted an

affidavit attesting to $10,000 in out-of-pocket expenses for defense costs and medical treatment,

however, Scott's affidavit was the only evidence he provided in support of his alleged injuries

---

[1]  Scott claims that a great deal of these expenses constitute hours spent prosecuting the instant matter. (R. 15, Pl.'s Resp., Ex., B, Aff.) Pursuant to 28 U.S.C. § 1332, the amount in controversy must exceed $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a). To the extent that any of the 200 hours cited by Scott were expended in litigating this case, they would constitute costs, not damages. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) ("[J]urisdiction depends on the state of affairs when the case begins; what happens later is irrelevant.").

and, at best, it supports compensatory damages of at most $10,000. *See id*. at 973 ("Aside from

his affidavit admitting only to the $10,000 in out-of-pocket expenses, Scott has offered no

affidavits or supporting materials to meet his burden of proving jurisdictional facts by a

preponderance of the evidence.") (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536,

543)) (7th Cir. 2006) (internal citations and quotation marks omitted); (R. 15, Pl.'s Resp., Ex., B,

Aff.). The Court found that Scott's other alleged injuries, *e.g.* "embarrassment, damage to

reputation, harassment, emotional distress, loss of time, and other damages," (R. 6, Am. Compl.

¶¶ 84, 91, 95, 100), were "unsupported by any facts or evidence of specific injury." *See Scott*,

893 F. Supp. 2d at 973-74; *see also Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1066 (N.D. Ill. 2009)

(holding that allegations of "reputational harm, emotional harm, emotional suffering, and

humiliation" in addition to "substantial" legal expenses were too vague to establish the

jurisdictional floor for damages absent any actual evidence of injury).

The party claiming federal jurisdiction bears the burden of establishing jurisdictional

facts. *Meridian Sec. Ins. Co.*, 441 F.3d at 540. If a plaintiff's "allegations of jurisdictional facts

are challenged by his adversary in any appropriate manner, he must support them by competent

proof." *Id.* (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936))

(internal quotation marks omitted). "'Competent proof' . . . has been interpreted to mean a

preponderance of the evidence or proof to a reasonable probability that jurisdiction exists."

*NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (quoting *Gould v.

Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993)) (internal quotation marks omitted). In its

Memorandum Opinion and Order, the Court found that Scott's affidavit, without more, did "not

give rise to the level of competent proof required to meet the statutory amount in controversy

minimum." *See Scott*, 893 F. Supp. 2d at 974 (citing *Ganjavi v. Smith*, No. 06 C 4189, 2007 WL

2298375, at *4 (N.D. Ill. July 31, 2007)).  In other words, Scott failed to introduce *any* evidence, other than an affidavit attesting to $10,000 in expenses and costs, to support his burden of "proving jurisdictional facts by a preponderance of the evidence." *See id.* at 973 (quoting *Meridian Sec. Ins. Co.*, 441 F.3d at 543) (internal quotation marks omitted).  Scott cannot meet this burden now by repeating the same arguments with the same lack of "facts or evidence" in his motion for reconsideration. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270; (R. 20, Pl.'s Mot. at 4).

## II.     Punitive damages

### A.     False imprisonment

Scott argues that the Court erroneously concluded that he failed to allege facts sufficient for an award of punitive damages on his false imprisonment claim.  (R. 20, Pl.'s Mot. at 5-6.) Scott's argument fails because, as the Court observed in its Memorandum Opinion and Order, the statute of limitations has run on Scott's claim for false imprisonment. *See Scott*, 893 F. Supp. 2d at 976.  The statute of limitations for false imprisonment claims in Illinois is two years. *See* 735 Ill. Comp. Stat. 5/13-202 ("Actions for damages . . . for false imprisonment . . . shall be commenced within 2 years next after the cause of action accrued . . ."); *Montague v. George J. London Mem'l Hosp.*, 396 N.E.2d 1289, 1293 (App. Ct. Ill. 1979) ("[P]laintiff's injuries are properly classified as false imprisonment, assault, battery or medical malpractice, and are subject to the two-year statute of limitations.").

Scott alleged that he was falsely imprisoned on March 22, 2010.  (R. 6, Am. Compl. at ¶¶ 62, 87.)  However, he brought his false imprisonment claim on March 23, 2012.  (R. 1, Compl.) Because Scott brought his false imprisonment claim after the statute of limitations had run, the Court cannot consider his claim.  The Seventh Circuit's decision in *Albright v. Oliver*, 975 F.2d

343, 344-45 (7th Cir. 1992), is almost perfectly on point with the instant case. In *Albright*, the plaintiff's "suit was brought one day short of two years after the dismissal of the prosecution. The complaint state[d] a plausible claim for false arrest. It is true that [the plaintiff] was not arrested in the conventional sense—he turned himself in. But it is enough that he was booked; that was a seizure of his person within the meaning of the Fourth Amendment. . . .[However the plaintiff] filed his suit more than two years after his arrest, so his constitutional claim of false arrest was barred by the statute of limitations." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Voytko v. Ramada Inn of Atlantic City*, 445 F. Supp. 315, 320, 324 (D. N.J. 1978)); *see also Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. However, as the district court observed, dismissal . . . on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)) (The defendant's "only response is to urge that . . . it was [ ] premature for the district court to dismiss his claim on the basis of the complaint. As an abstract proposition, that is usually true because complaints do not have to anticipate affirmative defenses to survive a motion to dismiss. The exception occurs where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.") (internal citations omitted). Scott's complaint "plainly reveals" on its face that his false arrest claim is "untimely under the governing statute of limitations" and thus he has alleged facts that are sufficient to establish the affirmative defense that his claim is time-barred. *See Hollander*, 457

F.3d at 691 n.1; *Lewis*, 411 F.3d at 842. Because Scott's false imprisonment claim is time-barred it cannot, therefore, provide the basis for an award of punitive damages sufficient to meet the jurisdictional requirement of $75,000.[2]

### B.    Malicious prosecution

Scott argues that he has pleaded sufficient facts to establish the malice necessary to support punitive damages in excess of $75,000. (R. 20, Pl.'s Mot. at 7-9.) The allegations of malicious prosecution, viewed in the light most favorable to Scott, establish the following facts. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."); *Transit Express, Inc. v. Ettinger.*, 246 F.3d 1018, 1023 (7th Cir. 2001) ("In considering a motion to  dismiss for lack of subject matter jurisdiction, the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor."). On December 20, 2009, Scott directly telephoned Bender, his former wife, leaving a voicemail message requesting that she contact him to discuss the production of certain tax documents. *See Scott*, 893 F. Supp. 2d at 967. At this time, 13 months had elapsed since Scott first requested production of these documents. *See id.* Bender has testified that the tone of Scott's voicemail message was "very calm." *See id.* Bender did not return the voicemail message as Scott requested, but rather called the Wheaton, Illinois police. *See id.* The Wheaton, Illinois Police Department prepared a recording of the voicemail message, pursuant to the Illinois

---

[2] Scott's argument that the Court required him to prove the entirety of his $300,000 punitive damages claim is without merit. (*see* R. 20, Pl.'s Mot. at 3, 6-7.) The Court merely found that neither *Adams v. Zayre Corp.*, 499 N.E.2d 678 (Ill. App. Ct. 2d Dist. 1986), nor any other Illinois case supported "such a vast award of punitive damages for a claim of false imprisonment." *See Scott*, 893 F. Supp. 2d at 975. The Memorandum Opinion and Order makes clear that Scott must only allege facts which plausibly entitle him to damages over $75,000, the necessary amount in controversy for diversity jurisdiction under 28 U.S.C. § 1332(a). *See id.* at 973-75.

Harassing and Obscene Communications Act, 720 Ill. Comp. Stat. 135/1 *et seq.*, (repealed Jan. 1, 2013). *See id.* On January 11, 2010, in cooperation with Assistant State's Attorney Flather and upon Flather's direction, Bender filed a sworn verification of Flather's criminal complaint, initiating criminal "telephone harassment" proceedings against Scott based on the voicemail message. *See id.*

On January 28, 2010, with Flather's guidance, encouragement, assistance, and participation, and at Flather's request, Bender petitioned the Circuit Court for DuPage County, Illinois for an Order of Protection (the "Petition") against Scott. *See id.* at 968. The Petition was prepared on a preprinted form, and in the appropriate location, Bender identified the incident which formed the basis of the Petition as: "James contacted me on my private cell phone and left me a message regarding taxes. I don't know how he got my phone number because I never gave it to him. I didn't call him back instead I contacted the local police department because James is not supposed to have any contact with me per our divorce decree. During our marriage, James was very controlling and I am afraid of him." *See id.*

According to Scott, the Petition allegedly served no other purpose than to vex and harass him. *See id.* Both Flather and Bender intended for the Arlington County, Virginia, Sheriff's Office to effect service of the Petition upon Scott at his home in Arlington. *See id.* Both Flather and Bender were aware that the Arlington County Sheriff's Office would receive no compensation for its efforts to serve the Petition. *See id.* Flather and Bender availed themselves of the services of the Arlington County Sheriff's Office to effect service upon Scott in the Commonwealth of Virginia. *See id.* Deputy Rodney Williams of the Arlington County Sheriff's Office attempted to effect service upon Scott. *See id.* Scott was, however, on extended business in Boston, Massachusetts when Deputy Williams attempted to effect service, and on account of

extraordinary contemporaneous snow conditions, Scott was only able to return to Arlington, Virginia on weekends, when the Arlington County Sheriff's Office could not effect personal service. *See id.*

On February 11, 2010, an *ex parte* hearing relating to the Petition nevertheless occurred. *See id.* Scott had not been served with the Petition and was not present at the February 11, 2010, hearing. *See id.* At the *ex parte* hearing the presiding judge characterized the Petition as being "extremely skimpy." *See id.* The judge stated, "[w]ell, the description of incidents indicates a phone call based on taxes. So I presume there is more to it and I'm going to allow you to file a supplemental description of incidents and we'll go from there." *See id.* Later, Bender testified about the circumstances surrounding the voicemail message. *See id.* During her testimony, Bender made no allegations of the use of foul language, abusive tone, or threats in the voicemail message. *See id.* The presiding judge denied the Petition without the benefit of Scott's presence, testimony, or cross-examination of Bender. *See id.* Scott contends that upon the denial of the Petition for an Order of Protection, Flather and Bender allegedly knew or reasonably should have known that the "telephone harassment" charges were completely unmeritorious. *See id.*

Despite the failure of the Petition for an Order of Protection, Bender continued to pursue the "telephone harassment" charges against Scott based on the same occurrence—a "very calm" voicemail message relating to a contractual duty that Scott claims Bender had neglected for 13 months. *See id.* On March 22, 2010, Scott was arrested, taken into custody, handcuffed, searched, deprived of his belt and shoelaces, held in a cell with apparent criminals for several hours, fingerprinted three times, and forced to post $1,000.00 bond in DuPage County, Illinois. *See id.* at 968-69. The terms of bond releasing Scott from the DuPage County Jail required that Scott remain within the State of Illinois. *See id.* at 969. Scott and his dog live in the

Commonwealth of Virginia. *See id.* On March 23, 2010, Scott filed a motion to modify the

terms of bond permitting him to leave the State of Illinois, providing the required three-day

notice for that motion to be heard. *See id.* On March 26, 2010, Scott's motion to modify the

terms of bond was granted, and he returned to his home in Virginia. *See id.*

Scott's argument with respect to pleading enough facts to establish the malice necessary

to support an award of punitive damages in excess of $75,000 on his malicious prosecution claim

confuses the two kinds of malice under Illinois law for malicious prosecution. To state a claim

of malicious prosecution a plaintiff must show "legal malice"; that is, malice which is one of the

elements of the common law tort of malicious prosecution. *Thieme v. MacArthur*, 1 N.E.2d 514,

515 (Ill. App. Ct. 2d Dist. 1936) (citing *Glenn v. Lawrence*, 117 N.E. 757, 759 (Ill. 1917)). To

recover punitive damages on a claim of malicious prosecution, however, a plaintiff must show a

higher degree of malice—what is often referred to as "actual malice." *Thomas v. Kerr*, 137 Ill.

App. 479, 483, 1907 WL 2326 (Ill. App. Ct. 3d Dist. 1907) ("[U]pon a consideration of all the

evidence we think the jury were not unwarranted in finding that there was *actual malice* upon the

part of appellant in causing the arrest and imprisonment of appellee, so that it was in their

province to allow punitive damages to appellee in case they found in his favor.") (emphasis

supplied); *see also Brewer v. Wal-Mart Stores, Inc.*, 87 F.3d 203, 207 (7th Cir. 1996) ("Proof

that a tort was committed is not sufficient to establish the right to punitive damages. . . . Punitive

damages may be awarded only if there is clear and convincing evidence that the defendant acted

with malice, fraud, gross negligence, oppressiveness[.]") (internal quotation marks omitted);

*Johnson v. City of Chi.*, No. 08 C 6570, 2009 WL 3346602, at *2 (N.D. Ill. Oct. 15, 2009) ("[A]

defendant's conduct may be sufficiently malicious to support the underlying cause of action

without necessarily being sufficient to support an award of punitive damages.") (quoting *Swick v.*

*Liautaud*, 662 N.E.2d 1238, 1247-48 (Ill. 1996) (McMorrow, J., concurring)) (internal quotation marks omitted); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *4 n.4 (N.D. Ill. Mar. 31, 2008) (citing *Swick*, 662 N.E.2d at 1238; *Templeman Co. v. Liberty Mut. Ins. Co.*, 735 N.E.2d 669 (Ill. App. Ct. 1st Dist. 2000)) ("To recover punitive damages for malicious prosecution requires a higher degree of malice (e.g. actual malice)."); *Thieme*, 1 N.E.2d at 518 (In a malicious prosecution case in "the absence of proof of malice, appellee would only be entitled to recover compensatory damages.").

One district court outside of this Circuit has characterized the difference between legal and actual malice as follows:

> In malicious prosecution actions, evidence of misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others is required to recover punitive damages. Actual malice may be established by showing that the prosecutor's . . . action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another. Unlike *legal* malice, actual malice cannot be inferred from a showing of want of probable cause, nor can it be presumed or inferred from a mere mistake. Thus, while [the plaintiff] established "legal malice" so that he can recover compensatory damages, he also must prove "actual malice" to recover punitive damages.

*Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 526 (E.D. Va. 2010) (internal citations and quotation marks omitted) (applying Virginia law), *aff'd*, 492 F. App'x 315 (4th Cir. 2012). As the Court of Appeals for the Fourth Circuit stated in affirming the district court's decision in *Bennett*:

> In cases involving malicious prosecution or defamation claims, punitive damages may be awarded if the defendant demonstrates, by clear and convincing evidence that the defendant acted with actual or express malice. . . . Actual malice is defined as conduct which is in conscious disregard of the rights of others and is wanton and oppressive. . . . While we acknowledge that lack of probable cause alone does not infer actual malice, . . . it does lend support to a finding that the defendants acted with actual malice. The Virginia Supreme Court has also explained, in somewhat nuanced terms, that punitive damages are appropriate in malicious prosecution cases where there is evidence of misconduct or actual

malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.

492 F. App'x at 334 (quoting *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 440-41 (4th Cir. 2004); citing *Oxenham v. Johnson*, 402 S.E.2d 1, 5 (Va. 1991)) (internal citations and quotation marks omitted). Although it is clear that neither the district court's decision in *Bennett* nor the Fourth Circuit's decision in *Bennett* are binding on this Court because they were rendered by a different Circuit, they nevertheless provides useful guidance on this issue and the Court accords them substantial, though not controlling, weight. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (District courts within the Seventh Circuit must follow its decisions, but they should give "respectful consideration to the views of other circuits."); *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986) ("Although decisions of other circuits are not necessarily controlling, the district courts should give them substantial weight.").

Scott has not explicitly alleged actual malice. Instead, Scott argues that he was prosecuted without probable cause and that a lack of probable cause is sufficient to show "malice of the nature required to support a claim for punitive damages." (R. 20, Pl.'s Mot. at 7-9.) Scott's argument misconstrues the law and is in error. Although jurisdictions are split on the issue, this Court is not aware of any case, and Scott has not brought any to the Court's attention, in which either an Illinois court or a federal court applying Illinois law has held that a lack of probable cause can give rise to an inference of *actual* malice necessary for an award of punitive damages. *See generally* Milton Roberts, Annotation, Defendant's State of Mind Necessary or Sufficient to Warrant Award of Punitive Damages in Action for Malicious Prosecution, 94 A.L.R.3d 791, § 5[a]-[b] (originally published in 1979).

The most that Illinois courts have said is that a lack of probable cause *may* result in an inference of *legal* malice under limited circumstances. *See, e.g., Frye v. O'Neill*, 520 N.E.2d

1233, 1241-42 (Ill. App. Ct. 4th Dist. 1988) (discussing the split among Illinois courts and holding that "malice may not be inferred solely from lack of probable cause")[3]; *Montgomery v. Harms*, 110 N.E.2d 522, 524 (Ill. App. Ct. 3d Dist. 1953) ("Malice may not be presumed from want of probable cause if all the evidence shows there was no malice.") (internal quotation marks omitted); *Shelton v. Barry*, 66 N.E.2d 697, 703 (Ill. App. Ct. 1st Dist. 1946) ("Malice is in no case a legal presumption from the want of probable cause."); *Hanneman v. Minn. St. P. & S.S.M. Ry. Co.*, 248 Ill. App. 196, 200, 1928 WL 3978 (Ill. App. Ct. 1st Dist. 1928) ("While it is true that the courts have held that the jury may infer malice from the want of probable cause, and that this question is generally one for the jury, yet it is not of universal application because the law will not permit the presumption that there was malice when all the evidence shows the contrary.").

The *Frye* court did not explicitly use the term "legal malice," but it is clear that the malice it is referring to is one of "the elements of the tort of malicious prosecution." 520 N.E.2d at 1240. The *Frye* court held that the "key to resolution of this apparent disagreement in the decisions is found in the supreme court's opinion in the early case of *Harpham v. Whitney*," 77 Ill. 32, 38-39, 1875 WL 8259 (Ill. 1875). In that case, the Supreme Court of Illinois held:

> To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution. There must be both want of probable cause and malice. If the law imputed malice from want of probable cause, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary. It is often said, the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case *a legal presumption* from the want of probable

---

[3] The court in *Frye*, 520 N.E.2d at 1241, identified only two cases in which the courts held that malice may be inferred from a lack of probable cause alone. *See Hulcher v. Archer Maniels Midland Co.*, 490 N.E.2d 412 (Ill. App. Ct. 4th Dist. 1980); *Ferrell v. Livingston*, 101 N.E.2d 599 (Ill. App. Ct. 3d Div. 1951). Given the authority going in the opposite direction, these two cases do not appear to state the proper rule of law.

cause, it being for the jury to find from the facts proved, where there was no probable cause, whether there was malice or not. And if the defendant can not justify by proof of probable cause, he may still rebut the presumption of malice by showing facts and circumstances calculated to produce at the time, on the mind of a prudent and reasonable man, a well-grounded belief or suspicion of the party's guilt.

*Id.*

Although *legal* malice *may* be inferred from a lack of probable cause in limited circumstances, *actual* malice—the type of malice required for the recovery of punitive damages—requires something more. *William J. Templeman Co.*, 735 N.E.2d at 674 (citing *AAA Emp't, Inc. v. Weed*, 457 So.2d 428, 432 (Ala. Civ. App. 1984)) (punitive damages require "a higher degree of malice than is necessary to prove a malicious prosecution"); *see also Swick*, 662 N.E.2d at 1247 (McMorrow, J., concurring) ("[A] defendant's conduct may be sufficiently malicious to support the underlying cause of action without necessarily being sufficient to support an award of punitive damages."). The late Justice McMorrow, in her concurrence in *Swick*, defined this heightened standard of malice as equivalent to "ill-will, spite, or hatred." 662 N.E.2d at 1248 (McMorrow, J., concurring). Scott identifies this standard in his motion to reconsider, (R. 20, Pl.'s Mot. at 7), but he failed to satisfy it in his amended complaint, in his response to Bender's motion to dismiss, or in his motion to reconsider. (R. 6, Am. Compl.; R. 15, Pl.'s Resp.; R. 20, Pl.'s Mot.) The Court previously found that Scott "has not provided facts . . . which would establish malice beyond the norm for a malicious prosecution claim." *See Scott*, 893 F. Supp. 2d at 975. Nothing in Scott's motion to reconsider changes the Court's prior conclusion.

Scott argues that *Thieme*, 1 N.E.2d at 517, supports his argument that a lack of probable cause suffices to show actual malice, thereby entitling him to punitive damages on his malicious prosecution claim. (R. 20, Pl.'s Mot. at 7-8.) Scott attaches much importance to the *Thieme* court's dictum that "[t]he law is well settled that malice will not be inferred where probable cause exists, still, where there is an entire lack of probable cause, malice may be presumed to

have been the motive actuating the prosecution." *Thieme*, 1 N.E.2d at 517; (R. 20, Pl.'s Mot. at 8.) Although it is difficult to determine the exact meaning of the quotation that Scott cites from *Thieme*, the context of the quotation, as well as its subsequent reliance on Illinois caselaw (which Scott omits from his motion), suggest that the court was referring to legal, not actual, malice. *Thieme*, 1 N.E.2d at 517; (citing *Roy v. Goings*, 112 Ill. 656, 1885 WL 8153 (1885)). The quotation appears in a discussion of whether the defendant in the case acted with malice or without probable cause or both—in other words, whether the defendant satisfied the elements for a malicious prosecution claim. Moreover, the *Thieme* court deferred consideration of punitive damages and actual malice until a later portion of its opinion. *Thieme*, 1 N.E.2d at 518 ("In the absence of proof of malice, [the plaintiff] would only be entitled to recover compensatory damages."). The *Thieme* court's two different applications of the word "malice" undercut Scott's argument. At best, Scott misinterprets *Thieme*.

Whatever the implication of its dicta, *Thieme* is distinguishable on its facts. In *Thieme*, the court found that the defendant acted with malice *in addition to* a lack of probable cause. *Id.* The *Thieme* court expressly found that the defendant lied to a State's Attorney regarding the plaintiff's whereabouts and employment status. *Id.* at 517. Because of these misrepresentations, the *Thieme* court found that the defendant caused the plaintiff to be maliciously prosecuted. *Id.* at 517-18. Scott, in contrast, alleges no specific acts of actual malice; he alleges *only* that Bender lacked probable cause to initiate the prosecution. (R. 20, Pl.'s Mot. at 8-9.) The *Thieme* court affirmed an award of punitive damages because the trial court found that the defendant acted with actual malice. *Id.* at 518. Therefore, *Thieme* does not support the proposition that a lack of probable cause, without more, is enough to recover punitive damages.

Furthermore, Scott's proposed rule ignores that Illinois courts require malice "which

exceeds that defining the underlying tort." *Swick*, 662 N.E.2d at 1248 (McMorrow, J.,

concurring). Under this rule, a lack of probable cause *must* only be equivalent to legal malice. If

a lack of probable cause alone were enough to show actual malice, *every* malicious prosecution

case would warrant punitive damages because a lack of probable cause is a necessary element of

a claim for malicious prosecution. *Id.* at 1242; *Thieme*, 1 N.E.2d at 515. Such a rule is not

intended to be the law of Illinois. It is precisely because not every malicious prosecution claim

warrants punitive damages that Illinois courts require "a higher degree of malice than is

necessary to prove a malicious prosecution." *William J. Templeman Co.*, 735 N.E.2d at 674

(internal citation omitted). The same reasoning applies with equal force to a lack of probable

cause. Because Scott failed to allege actual malice, he cannot recover punitive damages on his

malicious prosecution claim.

## CONCLUSION

The Court finds that it did not make any manifest errors of law in its prior Memorandum

Opinion and Order granting Bender's motion to dismiss. (R. 19, Mem. Op. and Order.) The

Court again holds that diversity jurisdiction does not exist to support Scott's claims pursuant to

28 U.S.C. § 1332, and therefore it has no subject-matter jurisdiction to entertain his cause of

action. Scott's motion to reconsider the Court's prior Memorandum Opinion and Order of

September 26, 2012 (R. 20) is DENIED. The denial shall be without prejudice to the refiling of

Scott's potential State-law claims in an appropriate State court as detailed in this Court's prior

Memorandum Opinion and Order. *See Scott*, 893 F. Supp. 2d at 976. The Clerk of the Court is

instructed to enter an order denying Scott's motion to reconsider,

ENTERED: *Judge [signature]*

Dated: May 2/, 2013

Judge Ruben Castillo
United States District Court